Steven Lee POPPENHAGEN,
Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C9–86–1600.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Edward M. Christian, Christian and Gross, Bloomington, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Peggy Lee Bunch, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Steven Lee Poppenhagen was arrested for driving while under the influence and refused testing under the implied consent law. His license was revoked for refusal, and he petitioned for judicial review. The trial court sustained the revocation, and Poppenhagen appeals.

## FACTS

On July 6, 1986, appellant Steven Lee Poppenhagen was riding a motorcycle on Pine County Road 7. His motorcycle left the road near Snake River Bridge, when it failed to make a curve, and he sustained injuries. The accident was reported to the Pine County Sheriff's Office at approximately 4:17 p.m., and Deputy Brett Grinde arrived on the scene at approximately 4:28 p.m. Grinde saw that appellant was injured and noticed the odor of an alcoholic beverage. Appellant's mother, who also arrived on the scene, informed Grinde that appellant had been drinking, and had "a couple of beers" early in the afternoon.

Grinde testified that appellant was conscious when he arrived on the scene, although another witness who arrived on the scene earlier testified that appellant was initially unconscious. An ambulance arrived, and six people were required to put appellant on a backboard and lift him from the stretcher into the ambulance. Grinde testified that appellant was conscious and yelling from the pain. Another witness testified appellant was screaming with pain and was not making any sense.

When Grinde arrived at the Rush City Hospital, the ambulance attendants told him appellant was conscious and in the x-ray room. Grinde went to the x-ray room and the x-ray technician told him it would be "okay" if he read the implied consent advisory. The ambulance attendants, medical technician, nurse, and doctor all indicated to Grinde that appellant was conscious and aware of his surroundings. Grinde testified that when there is an accident, it is his practice to check with the medical personnel to ensure that it is medically okay before he reads the implied consent advisory; and, here, the medical personnel said appellant was fine.

Deputy Grinde then read the implied consent advisory to appellant. He stated that appellant said he understood. Grinde asked appellant to take a blood or urine test. Appellant said no, stating "I don't feel I have to take the test." Grinde testified that he explained the implied consent advisory to appellant at least three times, and explained the effect of refusal. Appellant said he felt that because he was injured, he did not have to give the test. Grinde testified that as he was reading the form and explaining the rights, appellant was conscious and seemed to understand. Grinde characterized the conversation as "typical" and said appellant's responses were appropriate to the questions. There was nothing indicating appellant did not understand.

Appellant testified he was in Pine County to spend time with friends and family at his father's cabin for the Fourth of July holiday. He brought with him a cooler of "near beer," a non-alcoholic beverage, and drank three or four cans of the "near beer"

prior to the accident. Appellant's driver's license has a restriction which invalidates the license if appellant uses alcohol. Several witnesses also provided testimony that appellant was drinking "near beer." The trial court found that "near beer" has the general appearance and fragrance of beer. Appellant testified he did not consume any alcoholic beverage the day of the accident.

Appellant and his witnesses also offered testimony that he was driving a large motorcycle, which he had borrowed from his cousin's friend, that he had no motorcycle endorsement on his driver's license, and that he did not own a motorcycle. Appellant testified that as the motorcycle approached the curve in the road, something went wrong. He did not remember anything after that time until he awoke the next day at Ramsey Hospital. He did not recall being taken to the Rush City Hospital, talking to Deputy Grinde, or being transported to Ramsey Hospital. He did not recall being asked to provide a blood or urine sample or refusing to take the test.

The hospital report referred to multiple rib fractures, a loss of consciousness, a cerebral concussion, abrasions, and a thigh injury. It indicated that appellant regained consciousness in the ambulance, that he was awake at the Rush City Hospital, and that he did not remember the accident. There are also descriptions of appellant as alert and oriented, but it is not clear to which time period this refers.

The trial court concluded that Deputy Grinde had probable cause to believe appellant had been operating a motor vehicle while under the influence, and that appellant had refused testing after being properly offered the test. It sustained the revocation of appellant's driving privileges, and appellant appeals from the trial court order.

## ISSUES

1. Did the deputy have probable cause to believe appellant was driving while under the influence?

2. Was appellant incapable of refusing testing due to his injuries?

3. May appellant raise an issue for the first time on appeal?

## ANALYSIS

1. Appellant first argues that Deputy Grinde did not have probable cause to believe he was driving while under the influence. Minn.Stat. § 169.123, subd. 2(a) (Supp.1985) provides in relevant part that:

> The test may be required of a person when an officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121 * *.

In determining the sufficiency of a probable cause determination, the reviewing court must ensure that the officer had a substantial basis for concluding probable cause existed at the time the implied consent law is invoked. There are numerous signs which can indicate that a person is under the influence of an intoxicating liquor and each case must be decided upon its own facts. It is undisputed that appellant was driving the motorcycle; the dispute centers around whether the officer had probable cause to believe appellant was under the influence.

The facts upon which Deputy Grinde based his probable cause determination are that appellant was involved in a one vehicle accident in the afternoon in which his motorcycle left the road where it turned, he smelled the odor of an alcoholic beverage coming from appellant as they spoke, and, at the accident scene, appellant's mother informed Grinde that appellant had been drinking and had "a couple of beers" early in the afternoon.

Appellant offers alternative explanations. He contends the accident was caused by his unfamiliarity with the motorcycle, that the odor which Grinde noticed was the odor of malt from the "near beer," that he in fact did not consume alcohol prior to the accident, and that the beer which his mother referred to was the "near beer" which he drank. An innocuous explanation does not negate Grinde's determi-

nation of probable cause at the time the implied consent law is invoked. The facts in this case, as viewed by Grinde at the time he invoked the implied consent law, were sufficient to provide him with probable cause to believe appellant was driving while under the influence.

2. Appellant also argues that he did not knowingly and intelligently refuse to submit to testing and that if he did, his injuries prevented him from refusing.

Appellant in effect argues that he was incapable of refusal. He had no recollection of any of the circumstances surrounding the accident, including the request to take the test, until he awoke in the hospital in St. Paul the following day. He refers to his witness' testimony as to his memory loss, the medical records referring to his loss of consciousness and injuries, and the testimony as to the great pain he was in. Appellant asserts that because Grinde improperly determined he was capable of refusal, the revocation should be rescinded. *Douglas v. Commissioner of Public Safety*, 385 N.W.2d 850, 853 (Minn.Ct.App. 1986), *pet. for rev. denied* (Minn. June 19, 1986).

■ Grinde testified that he believed appellant was conscious and understood the implied consent advisory. Further, he checked with medical personnel, as was his practice, to determine appellant's capability to understand the implied consent advisory. The record supports the conclusion that appellant was capable of refusal and did refuse testing under the implied consent law.

3. The trial judge signed a criminal complaint on August 6, 1986, finding probable cause for the same incident. The implied consent hearing took place on August 7, 1986. Appellant asserts that he was not aware that the trial judge signed the criminal complaint finding probable cause on the day before the hearing until he was served with a complaint several days later. He contends that the trial judge should have informed him of his previous involvement in the criminal matter or that the trial judge should have recused himself.

■ Appellant did not raise this issue to the trial court. The parties submitted written arguments to the trial court, and the trial court issued an order sustaining the revocation on August 27, 1986. On September 11, 1986, appellant made a request for specific findings of fact from the trial court, which was treated as a motion pursuant to Minn.R.Civ.P. 52.02. Accordingly, on September 26, 1986, the court issued detailed findings of fact, conclusions of law, and order, with an attached memorandum, fully explaining its decision. Appellant did not, either in his memorandum, his request for findings, or any other motion, raise to the trial court the issue asserted on appeal. Generally, assignments of error not presented to the trial court for consideration will not be reviewed on appeal. *AAMCO Industries, Inc. v. DeWolf*, 312 Minn. 95, 100, 250 N.W.2d 835, 838 (1977). Furthermore, we have already fully reviewed the probable cause determination and affirmed the trial court's decision on the basis of the facts which were before it in the implied consent proceeding. The trial court properly found probable cause; no actual prejudice or bias occurred.

## DECISION

The trial court's order sustaining the revocation is affirmed.